# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2241-23

J.T.A.,[1]

    Plaintiff-Respondent,

v.

J.A.,

    Defendant-Appellant.

_____

> Submitted December 11, 2024 – Decided December 20, 2024
>
> Before Judges Mayer and Rose.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FV-02-1814-24.
>
> Bastarrika, Soto, Gonzalez & Somohano, LLP, attorneys for appellant (Jane M. Personette, of counsel and on the brief).
>
> Respondent has not filed a brief.

---

[1] We refer to the parties by their initials. R. 1:38-3(d)(10).

PER CURIAM

Defendant appeals from a February 13, 2024 final restraining order (FRO) entered by default in favor of plaintiff pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. He also appeals from a February 22, 2024 order denying his motion to reconsider the default FRO. For the reasons that follow, we vacate the entry of the default FRO and remand for a new trial. The February 3, 2024 temporary restraining order (TRO) shall remain in effect pending the outcome of the new trial.

We recite the facts from the trial and motion record. On February 3, 2024, plaintiff obtained a TRO against defendant. The TRO ordered the parties to appear for a domestic violence trial, in person, at 9:00 a.m. on February 13, 2024. On February 12, due to anticipated inclement weather on February 13, the trial court's staff emailed individuals scheduled for trial on February 13 that all matters would proceed remotely if the courthouse closed. The email included a link for counsel and parties to participate remotely for those events.

The Bergen County courthouse closed on February 13 due to inclement weather. Plaintiff timely appeared for the domestic violence trial via the court-provided Zoom link. Defendant did not appear. The Family Part judge waited until 10:30 that morning to proceed with the trial. At that time, the judge

A-2241-23

conducted a default hearing on plaintiff's application for an FRO against defendant.

Plaintiff testified defendant pulled her hair, choked her, and touched her offensively on February 2. After hearing plaintiff's testimony, the judge found plaintiff met her burden of proving defendant committed the predicate act of harassment under N.J.S.A. 2C:33-4(b).

After determining plaintiff satisfied her burden of proving defendant committed "an act of harassment," the judge found "the best interests of the plaintiff are supported by the entry of a restraining order, and that there's an immediate danger to the plaintiff in this case." The judge entered an FRO by default in favor of plaintiff.

The next day, February 14, 2024, defendant filed an application to modify the FRO. In his application, defendant stated he arrived at the courthouse on February 13 at 8:15 a.m., but was informed by an officer that the courthouse was closed. The officer provided a telephone number for defendant to call. According to defendant, no one answered the telephone when he called the number provided by the officer. Defendant further asserted he first saw the February 12 email from the court's staff after he returned home from the courthouse on February 13. Defendant attempted to log in via the Zoom link

but the trial already concluded. In his application, defendant requested a new FRO hearing.

On February 22, the Family Part judge who entered the default FRO held a hearing on defendant's application. While defendant requested modification of the FRO, the judge treated the application as a motion to vacate the FRO. The judge did not ask defendant why he failed to appear for trial via the Zoom link. In a February 22, 2024 order, the judge denied defendant's motion to vacate the FRO, explaining defendant failed to show "excusable neglect, because he was sent the Zoom link the day before the date of the trial and did not log into the Zoom call . . . until 2:00."

After defendant filed a notice of appeal, the Family Part judge issued an April 4, 2024 written amplification of his February 22, 2024 order denying the motion to vacate the FRO. In his amplification, the judge stated:

> [D]efendant admitted that he was aware of the matter proceeding remotely on February 13, 2024 and offered no showing of excusable neglect to support his failure to participate in the hearing on that date. All attempts to contact the defendant on that date were unsuccessful. In addition, the [c]ourt received no communication from the defendant on that date explaining his actions and his failure to appear.
>
> . . . .

4

The defendant was aware of the matter proceeding remotely via Zoom and failed to properly avail himself of the Zoom link to appear during the scheduled matter and failed to present a cogent reason for his failure to appear remotely despite the defendant being fully aware of his requirement to participate.

On appeal, defendant argues the judge erred in denying defendant's application for a new FRO hearing. Defendant also contends plaintiff failed to meet her burden of proof in support of the FRO.

Our review of a Family Part judge's order is limited. See Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). "Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413. Accordingly, "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12. However, we review a Family Part judge's interpretation of the law de novo. D.W. v. R.W., 212 N.J. 232, 245-46 (2012).

Additionally, a judge's decision on a motion to vacate default judgment will not be disturbed absent a clear abuse of discretion. US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012). Further, we review a judge's decision on a motion for reconsideration for abuse of discretion. Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). An abuse of discretion arises when a decision is "made without a rational

5

explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (citation omitted).

We first address the Family Part judge's treatment of defendant's motion. The judge reviewed defendant's application as a motion to vacate the default FRO. However, the order entered on February 22, 2024 denied a motion for reconsideration. The two applications are reviewed under different legal principles and court rules.

Under Rule 4:49-2, reconsideration should be granted only where (1) "the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis," or (2) "it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990). In other words, "a motion for reconsideration provides the court, and not the litigant, with an opportunity to take a second bite at the apple to correct errors inherent in a prior ruling." Conforti v. County of Ocean, 255 N.J. 142, 169 (2023) (quoting Medina v. Pitta, 442 N.J. Super. 1, 18 (App. Div. 2015)).

On the other hand, a motion to vacate default judgment is governed by Rule 4:50. Rule 4:50-1 allows a court to vacate a default judgment "whenever

6

necessary to prevent a manifest denial of justice." Manning Eng'g, Inc. v. Hudson Cnty. Park Comm'n, 74 N.J. 113, 120 (1977). This rule "is designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." Ibid.

"It is axiomatic that an application to vacate a default judgment is 'viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached.'" N.J. Div. of Youth & Fam. Servs. v. T.J.B., 338 N.J. Super. 425, 434 (App. Div. 2001) (quoting Marder v. Realty Constr. Co., 84 N.J. Super. 313, 319 (App. Div. 1964)). Any doubt regarding an application to vacate a default judgment "should be resolved in favor of the parties seeking relief." Mancini v. EDS, 132 N.J. 330, 334 (1993) (citing Arrow Mfg. Co. v. Levinson, 231 N.J. Super. 527, 534 (App. Div. 1989)).

Applications to vacate a judgment are "particularly important when the results have consequences of magnitude." T.J.B., 338 N.J. Super. at 434. The entry of an FRO has significant ramifications, including prohibitions against the possession of weapons, N.J.S.A. 2C:25-29(b), and "registration in a central registry . . . that is not subject to expungement." Shah v. Shah, 184 N.J. 125, 140 (2005) (citing In re M.D.Z., 286 N.J. Super. 82 (App. Div. 1995)).

7

Rule 4:50-1 provides grounds for vacating a default judgment. Under subsection (a) of this rule, a default judgment may be vacated based on a finding of "mistake, inadvertence, surprise, or excusable neglect." Under subsection (f) of this rule, a default judgment may be vacated for "any other reason justifying relief from the operation of the judgment or order."

Here, the judge declined to vacate the default FRO because defendant "failed to show excusable neglect." However, at the February 22, 2024 hearing, the judge never asked defendant to explain his failure to appear at trial. Nor did the judge ask why defendant waited until 2:00 p.m. on February 13 to log into the hearing via the Zoom link. Despite lacking this information, the judge concluded defendant had "more than sufficient time" to appear for the domestic violence trial at 10:30 a.m. on February 13. Moreover, while the judge's written amplification stated "[a]ll attempts to contact the defendant on [February 13] were unsuccessful," the record provides no information how the judge's staff attempted to contact defendant. There are a variety of reasons defendant may have been unable to participate remotely in the domestic violence trial. However, the judge failed to inquire why defendant did not appear for trial before concluding defendant failed to establish excusable neglect in support of vacating the default FRO.

Additionally, the Family Part judge never considered vacating the default FRO under Rule 4:50-1(f). This subsection authorizes relief from judgments in "exceptional situations." Mancini, 132 N.J. at 336 (quoting Baumann v. Marinaro, 95 N.J. 380, 395 (1984)). Because subsection (f) "deals with exceptional circumstances, each case must be resolved on its own particular facts." Baumann, 95 N.J. at 395. "Among the factors to be taken into account . . . are the 'extent of the delay in making the application for relief, the underlying reason or cause, fault or blam[e]lessness of the litigant, and any prejudice that would accrue to the other party.'" In re Guardianship of J.N.H., 172 N.J. 440, 474 (2002) (quoting C.R. v. J.G., 306 N.J. Super. 214, 241 (Ch. Div. 1997)).

Here, there are reasonable grounds for relief under subsection (f). First, defendant faces serious and enduring consequences as a result of the default FRO. Additionally, any argument that defendant deliberately failed to appear at trial via the Zoom link is belied by defendant's physical presence at the Bergen County courthouse before 8:30 a.m. on February 13. Moreover, the day after the entry of the default FRO, defendant filed an application requesting a new FRO hearing. Further, we discern no resulting prejudice to plaintiff by vacating

9

the default FRO and scheduling a new domestic violence trial because the TRO will remain in full force and effect until the conclusion of the new trial.

Additionally, although the judge's February 22, 2024 order denied reconsideration, the judge never addressed the court rule or case law governing a motion for reconsideration. Judges are required to "make findings of fact and to state reasons in support of their conclusions." Heinl v. Heinl, 287 N.J. Super. 337, 347 (App. Div. 1996); see also R. 1:7-4. "Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion." Strahan v. Strahan, 402 N.J. Super. 298, 310 (App. Div. 2008) (quoting Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990)). "The absence of adequate findings . . . necessitates a reversal." Heinl, 287 N.J. Super. at 347.

Here, neither the judge's oral statement of reasons placed on the record on February 22, 2024, nor his April 4, 2024 written amplification addressed whether the FRO was issued "upon a palpably incorrect or irrational basis," or failed to consider "probative, competent evidence." D'Atria, 242 N.J. Super. at 401.

On this record, we are constrained to vacate the default FRO and remand for a new trial. On remand, we take no position on the merits of plaintiff's application for an FRO.

Vacated and remanded for a new trial.  The TRO remains in place pending the outcome of the new trial.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-2241-23